## NEW YORK TRUST COMPANY ET AL., AS EXECUTORS OF PURDY, *v.* EISNER.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 286.  Argued April 25, 26, 1921.—Decided May 16, 1921.

1. The Act of September 8, 1916, c. 463, Title II, § 201 *et seq.*, 39 Stat. 777, imposes a tax on the transfer of the net estate of every decedent, graduated according to the value as ascertained by deducting, in the case of a resident, from the gross estate, funeral, administration and other expenses and charges, and a specified exemption; the tax is due in one year from the decedent's death, is payable primarily by the personal representative, and is made a lien upon the gross estate except such part as is paid out for allowed charges, etc. *Held,* an indirect tax, not requiring apportionment, and not an unconstitutional interference with the rights of the States to regulate descent and distribution. P. 348. *Knowlton* v. *Moore,* 178 U. S. 41.

2. That the tax may occasion inequalities in amounts received by beneficiaries does not affect its validity. P. 349.

3. "Charges against the estate," deductible under § 203 of the act in computing net value, affect the estate as a whole, and therefore do not include state inheritance and succession taxes on the shares of individual beneficiaries. P. 350.

263 Fed. Rep. 620, affirmed.

THE case is stated in the opinion.

*Mr. George Sutherland,* with whom *Mr. Francis J. McLoughlin* and *Mr. H. T. Newcomb* were on the briefs, for plaintiffs in error.

*The Solicitor General* for defendant in error.

*Mr. John B. Gleason,* for the State Comptroller of the State of New York, by special leave of court.

*Mr. J. Weston Allen,* Attorney General of the Commonwealth of Massachusetts, for the Commonwealth of Massachusetts, by special leave of court.

*Mr. Clifford L. Hilton,* Attorney General of the State of Minnesota, and *Mr. Egbert S. Oakley,* by leave of court, · filed a brief as *amici curiæ.*

*Mr. Arcadius L. Agatin* and *Mr. Francis H. De Groat,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the executors of one Purdy to recover an estate tax levied under the Act of Congress of September 8, 1916, c. 463, Title II, § 201, 39 Stat. 756, 777, and paid under duress on December 14, 1917. According to the complaint Purdy died leaving a will and codicil directing that all succession, inheritance and transfer taxes should be paid out of the residuary estate, which was bequeathed to the descendants of his brother. The value of the residuary estate was $427,414.96, subject to some administration expenses. The executors had been required to pay and had paid inheritance and succession taxes to New York ($32,988.97) and other States ($4,780.91) amounting in all to $37,769.88. The gross estate as defined in § 202 of the act of Congress was $769,799.39; funeral expenses and expenses of administration, except the above taxes, $61,322.08; leaving a net value for the payment of legacies, except as reduced by the taxes of the United States, of $670,707.43. The plaintiffs were compelled to pay $23,910.77 to the United States, no deduction of any part of the above mentioned $37,769.88 being allowed. They allege that the act of Congress is unconstitutional, and also that it was misconstrued in not allowing a deduction of state inheritance and succession taxes as charges within the meaning of § 203. On demurrer the District Court dismissed the suit.

By § 201 of the act, "a tax . . . equal to the following percentage, of the value of the net estate, to be

determined as provided in section two hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act," with percentages rising from one per centum of the amount of the net estate not in excess of $50,000 to ten per centum of the amount in excess of $5,000,000. Section 202 gives the mode of determining the value of the gross estate. Then, by § 203 it is enacted "That for the purpose of the tax the value of the net estate shall be determined—(a) In the case of a resident, by deducting from the value of the gross estate—(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages, losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, and from theft, when such losses are not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges against the estate, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered; and (2) an exemption of $50,000." The tax is to be due in one year after the decedent's death. § 204. Within thirty days after qualifying the executor is to give written notice to the collector and later to make return of the gross estate, deductions allowed, net estate and the tax payable thereon. § 205. The executor is. to pay the tax. § 207. The tax is a lien for ten years on the gross estate except such part as is paid out for allowed charges, § 209, and if not paid within sixty days after it is due is to be collected by a suit to subject the decedent's property to be sold. § 208. In case of collection from some person other than the executor, the same section provides for contribution from or marshalling of persons subject to equal or prior liability "it being the purpose and intent of this title that so far as is practicable and unless otherwise directed by the will of the decedent the tax

shall be paid out of the estate before its distribution."
These provisions are assailed by the plaintiffs in error
as an unconstitutional interference with the rights of the
States to regulate descent and distribution, as unequal
and as a direct tax not apportioned as the Constitution
requires.

The statement of the constitutional objections urged
imports on its face a distinction that, if correct, evidently
hitherto has escaped this Court. See *United States* v.
*Field*, 255 U. S. 257. It is admitted, as since *Knowlton* v.
*Moore*, 178 U. S. 41, it has to be, that the United States
has power to tax legacies, but it is said that this tax is
cast upon a transfer while it is being effectuated by the
State itself and therefore is an intrusion upon its processes,
whereas a legacy tax is not imposed until the process is
complete. An analogy is sought in the difference between
the attempt of a State to tax commerce among the States
and its right after the goods have become mingled with
the general stock in the State. A consideration of the
parallel is enough to detect the fallacy. A tax that was
directed solely against goods imported into the State and
that was determined by the fact of importation would
be no better after the goods were at rest in the State than
before. It would be as much an interference with com-
merce in one case as in the other. *Darnell & Son Co.* v.
*Memphis*, 208 U. S. 113. *Welton* v. *Missouri*, 91 U. S.
275. Conversely if a tax on the property distributed by
the laws of a State, determined by the fact that distribu-
tion has been accomplished, is valid, a tax determined by
the fact that distribution is about to begin is no greater
interference and is equally good.

*Knowlton* v. *Moore*, 178 U. S. 41, dealt, it is true, with
a legacy tax. But the tax was met with the same objec-
tion; that it usurped or interfered with the exercise of state
powers, and the answer to the objection was based upon
general considerations and treated the "power to transmit

or the transmission or receipt of property by death "
as all standing on the same footing. 178 U. S. 57, 59.
After the elaborate discussion that the subject received
in that case we think it unnecessary to dwell upon matters
that in principle were disposed of there. The same may
be said of the argument that the tax is direct and there-
fore is void for want of apportionment. It is argued that
when the tax is on the privilege of receiving, the tax is
indirect because it may be avoided, whereas here the tax
is inevitable and therefore direct. But that matter also
is disposed of by *Knowlton* v. *Moore*, not by an attempt
to make some scientific distinction, which would be at
least difficult, but on an interpretation of language by
its traditional use—on the practical and historical ground
that this kind of tax always has been regarded as the
antithesis of a direct tax; "has ever been treated as a
duty or excise, because of the particular occasion which
gives rise to its levy." 178 U. S. 81–83. Upon this point
a page of history is worth a volume of logic.

The inequalities charged upon the statute, if there is
an intestacy, are all inequalities in the amounts that
beneficiaries might receive in case of estates of different
values, of different proportions between real and personal
estate, and of different numbers of recipients; or if there
is a will affect legatees. As to the inequalities in case of a
will they must be taken to be contemplated by the testator.
He knows the law and the consequences of the disposition
that he makes. As to intestate successors the tax is not
imposed upon them but precedes them and the fact that
they may receive less or different sums because of the
statute does not concern the United States.

There remains only the construction of the act. The
argument against its constitutionality is based upon a
premise that is unfavorable to the contention of the
plaintiffs in error upon this point. For if the tax attaches
to the estate before distribution—if it is a tax on the right

to transmit, or on the transmission at its beginning, obviously it attaches to the whole estate except so far as the statute sets a limit. "Charges against the estate" as pointed out by the Court below are only charges that affect the estate as a whole, and therefore do not include taxes on the right of individual beneficiaries. This reasoning excludes not only the New York succession tax but those paid to other States, which can stand no better than that paid in New York. What amount New York may take as the basis of taxation and questions of priority between the United States and the State are not open in this case.

*Decree affirmed.*